```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| BORIS EDGARDO BONILLA | : |
|    v. | :  Civil Action No. DKC 09-2836 |
|  |    Criminal Case No. DKC 07-135 |
| UNITED STATES OF AMERICA | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the *pro se* motion of Petitioner Boris Edgardo Bonilla to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 211). The issues are briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the motion will be denied.

**I.   Background**

Petitioner is a Guatemalan national who was arrested in New York in January 2007. On January 29, 2007, the federal government filed a criminal complaint against Petitioner in the United States District Court for the Eastern District of New York, which appointed counsel to represent Petitioner that same day. The complaint was dismissed on February 27, 2007, and Petitioner was transported to Maryland.

In an indictment filed with this court on March 21, 2007, Petitioner and several others were charged with (among other

offenses) conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. On April 5, 2007, the court appointed Timothy J. Sullivan, Esq., to represent Petitioner. Petitioner's initial appearance occurred several days later, on April 9, 2007. The government filed a superseding indictment on April 11, 2007.

On May 1, 2007, the court held a scheduling conference as to all defendants. Because of the number of defendants and the variety of motions expected to be filed, the court scheduled the six-week jury trial to begin on April 22, 2008. On December 11, 2007, Petitioner filed a *pro se* motion to appoint new counsel. Magistrate Judge Schulze conducted an attorney inquiry hearing on December 14, 2007, and appointed Ricardo Zwaig, Esq., as new counsel for Petitioner shortly thereafter.

On April 25, 2008, Petitioner pled guilty to Count I of the superseding indictment pursuant to a written plea agreement. On November 17, 2008, Petitioner was sentenced to ten years' imprisonment, followed by five years' supervised release. He did not appeal.

In the instant § 2255 motion, Petitioner asserts three grounds for relief: (1) he did not have effective counsel; (2) he did not have access to counsel; and (3) he did not have

timely access to counsel.  The narrative portion of his motion explains:

> Ground One: I did not have effective counsel.
>
> Supporting Facts:  My first court appointed lawyer offered me an expired plea agreement.  In a meeting with prosecution, FBI, DEA, ICE, my second court appointed lawyer told me that I would get 2 point reduction if I testify against [co-conspirator] even if he and other parties also pled.  I accepted that plea agreement.  I did not get the 2 point reduction.  My second lawyer did not effectively argue that I should still get the 2 point reduction.
>
> Ground Two: I did not have access to counsel.
>
> Supporting Facts:  My embassy w[as] not able to contac[t] me during the over 15 months before my plea.  My first appointed lawyer gave me incorrect information (the wrong Business Card).  Hence I had no access to counsel for the first 7 months of my detention.  He did not contact me during this time.
>
> Ground Three:  I did not have timely access to counsel.
>
> Supporting Facts:  I was arrested in January 2007.  The court only accepted my request for a new lawyer in December 2007, over 11 months after my arrest.  I accepted the first non-expired plea agreement that I was offered, 60 days after it was offered; so I acted in timely fashion.

(ECF No. 211, at 5).  The government filed an opposition on January 2, 2010 (ECF No. 214), and Petitioner did not reply.

3

**II.  Standard of Review**

Title 28 U.S.C. § 2255 requires a petitioner to prove, by a preponderance of the evidence, that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  A *pro se* movant is, of course, entitled to have his arguments reviewed with appropriate consideration.  *See Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978).  But if the § 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily.  28 U.S.C. § 2255(b).

**III. Analysis**

    A.  **Ineffective Assistance of Counsel**

The thrust of Petitioner's first ground for relief is that his second court-appointed attorney provided ineffective assistance of counsel in connection with his guilty plea and sentencing.  This claim is governed by the well-settled standard adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the *Strickland* standard, Petitioner must show both that his attorney's performance fell

4

below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 687.

In applying *Strickland*, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The reasonableness of attorney conduct must be judged "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney's performance been deficient. *See Strickland*, 466 U.S. at 697; *see also Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (courts need not address objective unreasonableness if there is no prejudice).

To demonstrate actual prejudice, Petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where, as here, a conviction resulted from a guilty plea, the showing of prejudice required by *Strickland* must take a specific form:

5

> A different inquiry is necessary with respect to the prejudice prong, however, where a conviction is based upon a guilty plea. In that situation, a person must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In discussing "the importance of protecting the finality of convictions obtained through guilty pleas," the Supreme Court recently declared that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, ---- U.S. ----, 130 S.Ct. 1473, 1484-85 (2010).

*United States v. Flugit*, 703 F.3d. 248, 259 (4th Cir. 2012).

Here, Petitioner identifies two purported errors by Mr. Zwaig, his second court-appointed attorney. First, Petitioner contends that he accepted the government's plea offer based on his attorney's representation that he would get a two-point reduction for testifying against a purported co-conspirator. Second, he contends that his attorney did not effectively argue for a two-point reduction at sentencing. Both of these arguments fail under *Strickland*.

Initially, both of the "errors" alleged by Petitioner are belied by the factual record. There is no evidence that the government offered Petitioner a cooperation plea, or that Petitioner thought he had entered into such an agreement. The written plea agreement did not contain any cooperation provision, nor any discussion of a departure pursuant to

6

U.S.S.G. § 5K1.1. (*See* ECF No. 214-3). Moreover, the plea transcript contains Petitioner's sworn testimony that all promises were contained in the written agreement that was discussed that day. (ECF No. 214-4, at 24). "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks and citations omitted); *cf. Little v. Allsbrook*, 731 F.2d 238, 240 n. 2 (4th Cir. 1984) ("In the absence of clear and convincing evidence to the contrary, [the defendant] must be bound by what he said at the time of his plea.").[1]

The plea agreement did state that "[i]f the Defendant meets the criteria set forth in U.S.S.G. § 5C1.2(a)(1)-(5), a

---

[1] In its opposition to Petitioner's § 2255 motion, the government represents that, *after* Petitioner entered his guilty plea and it became evident that he would be ineligible for the so-called safety valve benefit under U.S.S.G. § 2D1.1, his attorney approached the government about the possibility of an adjustment under § 5K1.1 for cooperation. (ECF No. 214, at 3-4). The government apparently indicated to counsel that such an adjustment was a possibility, but ultimately determined that Petitioner was ineligible for a cooperation credit. (*Id.* at 4). This timeline of events further undermines Petitioner's allegation that he accepted the plea offer based on his attorney's representation that he would receive a cooperation credit.

7

two (2) level downward adjustment applies, pursuant to U.S.S.G. § 2D1.1(b)(11)."  (ECF No. 214-3, at 4).  Unfortunately, Petitioner was ineligible for the safety valve adjustment under § 5C1.2 because he had 3 criminal history points.  His attorney did argue, albeit unsuccessfully, that Petitioner should still receive the safety valve reduction, as well as a minor role adjustment.  Indeed, his attorney vigorously advanced these arguments both in the sentencing memorandum (*see* ECF No. 197) and again at sentencing (*see* ECF No. 214-5, at 53-60).  In the end, however, the court sentenced Petitioner to the mandatory minimum sentence.

In addition to the lack of factual support for his allegations, Petitioner fails to show actual prejudice resulting from his second attorney's allegedly ineffective assistance. Because he pled guilty, Petitioner is required under *Strickland* to demonstrate that, but for his second attorney's purported errors, he would not have pled guilty and would have insisted on going to trial.  Petitioner utterly fails to make any such showing in his motion, and his claim of ineffective assistance of counsel must be rejected.[2]

---

[2] To the extent that Petitioner's motion could be construed as asserting an ineffective assistance claim in connection with his first court-appointed attorney's purported failure to present a plea offer before its expiration, such a claim would

8

### B.  Lack of Access To Counsel & Embassy Notification

In support of his second ground for relief – *i.e.*, that he "did not have access to counsel" – Petitioner alleges that "[m]y embassy w[as] not able to contac[t] me during the over 15 months before my plea." (ECF No. 211, at 5). This contention appears to be premised on the Vienna Convention on Consular Relations, Apr. 24, 1963, [1970] 21 U.S.T. 77, 100–101, T.I.A.S. No. 6820 ("the Vienna Convention"). Article 36 of the Vienna Convention

---

also fail.  The Supreme Court recently explained that an attorney's failure to communicate a plea offer to a criminal defendant before its expiration can constitute deficient performance under the first prong of *Strickland*. *See Missouri v. Frye*, --- U.S. ----, 132 S.Ct. 1399, 1408 (2012).  To establish prejudice in this context, the *Frye* Court held that criminal defendants must demonstrate, among other things, "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 1409.  Here, Petitioner alleges no facts supporting the existence of an earlier formal plea offer, nor does he establish the "reasonable probability" that he would have accepted such an offer had counsel communicated it to him at an earlier date. Indeed, it is not clear from Petitioner's motion that the alleged earlier plea offer contained different (let alone more favorable) terms than the one he ultimately accepted.  Thus, even assuming that the government did extend a formal plea offer at an earlier date, Petitioner does not meet the actual prejudice standard established by *Frye*.

Similarly, to the extent that Petitioner's motion could be construed as asserting that his first court-appointed attorney rendered ineffective assistance of counsel by not visiting him frequently enough, such an argument likewise is without merit. Petitioner does not explain if or how more frequent meetings with his counsel would have changed the outcome of his case and thus fails to demonstrate actual prejudice as required under *Strickland*.

provides that "when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 338-39 (2006).

It is not entirely clear, however, whether Article 36 of the Vienna Convention creates individually enforceable rights. *See Bell v. True*, 413 F.Supp.2d 657, 729-732 (W.D.Va. 2006) (surveying relevant authorities and concluding that "no clearly established federal law directs that Article 36 creates an individually enforceable right to consular access"). The Fourth Circuit, for instance, has expressed skepticism that Article 36 confers individual rights, but only in *dicta*. *United States v. Al-Hamdi*, 356 F.3d 564, 574 n. 13 (4th Cir. 2004) (stating that it is "doubtful" that the Vienna Convention creates individual rights for consular notification violations). The Supreme Court has repeatedly avoided the issue. *See, e.g.*, *Medellin v. Texas*, 552 U.S. 491, 506 n. 4 (2008); *Sanchez-Llamas*, 548 U.S. at 342-43.

Even if one assumes that the Vienna Convention creates individually enforceable rights, an individual asserting a violation of such rights must, at a minimum, show resulting prejudice in order to prevail. *See Medellin v. Dretke*, 544 U.S.

10

660, 665 n. 3 (2005) ("[A] successful Vienna Convention claimant likely must demonstrate prejudice.") (citing *Breard v. Greene*, 523 U.S. 371, 375-77 (1998)); *Zoa v. United States*, Civ. No. PJM 10-2823, Cr. No. PJM 06-235, 2011 WL 3417116, at *3 (D.Md. Aug. 1, 2011) (denying petitioner's § 2255 motion to modify his sentence where he "merely point[ed] out that he was denied the opportunity to speak with the consulate" but failed to show that "his case was prejudiced" in any way); *Hernandez v. United States*, 280 F.Supp.2d 118, 124-25 (S.D.N.Y. 2003) (petitioner was not entitled to relief under § 2255 for a conceded violation of the Vienna Convention where he failed to explain how consultation with his embassy would have "altered the outcome of the case in any way").

Here, even if it is assumed that Petitioner has individually enforceable rights under the Vienna Convention and that such rights were violated by the purported fifteen-month delay in notifying the Guatemalan embassy of his detention,[3]

---

[3] There is contradicting information in the record about the length of the purported delay in notifying Petitioner's embassy. In his December 2007 motion for new counsel, Petitioner indicated that Mr. Sullivan, his first court-appointed attorney, prepared a letter to the Guatemalan embassy that Petitioner sent in October 2007. (*See* ECF No. 120). If this version of events is credited, the length of the purported delay would be seven (rather than fifteen) months. For purposes of the instant motion, this dispute is irrelevant because Petitioner fails to

Petitioner does not allege or establish any prejudice resulting from this violation. Nowhere does Petitioner explain if or how consultation with the Guatemalan embassy at an earlier date would have changed any of the actions he took in this case or altered the outcome in any way. Therefore, because Petitioner fails to show that any prejudice resulted from the alleged delay in contacting his embassy, his § 2255 motion must be denied to the extent it seeks relief on this basis.

### C. Lack of Timely Access to Counsel

Petitioner's third ground for relief – that he was denied timely access to counsel – also lacks evidentiary support. Petitioner avers that "I had no access to counsel for the first 7 months of my detention" and that "[t]he court only accepted my request for a new lawyer in December 2007, over 11 months after my arrest." (ECF No. 211, at 5). The record, however, reflects that this court appointed Petitioner counsel on April 5, 2007 – four days before his initial appearance. The earliest (and only) indication of Petitioner's dissatisfaction with his first attorney is the motion he filed on December 11, 2007. (ECF No. 120). Judge Schulze took prompt action on this request by holding an attorney inquiry hearing just three days later and

---

suffer any resulting prejudice from the alleged Vienna Convention violation.

12

appointing new counsel. (ECF No. 121). Thus, there is no merit to Petitioner's argument regarding lack of timely access to counsel.

**IV. Conclusion**

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue

unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quotation marks omitted).  Upon its review of the record, the court finds that Petitioner does not satisfy the above standard.

                                        /s/
                             DEBORAH K. CHASANOW
                             United States District Judge